**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**

**Dated: December 14, 2004**

Lawrence S. Walter
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

In re:

| | | |
|---|---|---|
| **HUFFY CORPORATION,** | ) | **Chapter 11** |
| **an Ohio corporation, *et al.*[1]** | ) | **Honorable Lawrence S. Walter** |
| **Debtors.** | ) | |
| | ) | **Case Nos. 04-39148 through 04-39167** |
| | ) | **Jointly Administered** |

**ORDER GRANTING DEBTORS' MOTION (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN ASSETS UNDER ASSET PURCHASE AGREEMENT FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS AND FREE FROM STAMP, SALES OR OTHER SIMILAR TAXES, SUBJECT TO HIGHER AND BETTER OFFERS, (II) APPROVING THE PROCEDURES FOR AN AUCTION, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT AND REJECTION OF CERTAIN EXECUTORY CONTRACTS IN CONNECTION THEREWITH AND (IV) APPROVING THE FORM OF NOTICE THEREOF**

_____

[1] The debtors are the following entities:  Huffy Corporation, Huffy Risk Management, Inc., HUFCO-Ohio, Inc., HCAC, Inc., Hufco-Delaware Company, Huffy Sports, Inc., American Sports Design Company, Huffy Sports Washington, Inc., Huffy Sports Outlet, Inc., Huffy Sports Canada, Inc., Lehigh Avenue Property Holdings, Inc., Tommy Armour Golf Company, Lamar Snowboards, Inc., Huffy Sports Delaware, Inc., First Team Sports, Inc., Hespeler Hockey Holding, Inc., HUFCO-Georgia I, Inc., HUFCO-Georgia II, Inc., HUFCO-New Brunswick, Inc., and HUF Canada, Inc.

This matter having been brought before the Court by motion filed by Huffy Sports Canada, Inc. ("Huffy Sports Canada"), Huffy Sports Delaware, Inc., ("Huffy Sports Delaware") and HUF Canada, Inc., ("HUF Canada") Lamar Snowboards, Inc ("LSI") and Huffy Corporation ("Huffy" or "the Company"), debtors and debtors in possession under the above-captioned jointly administered Chapter 11 cases (each a "Debtor," and all collectively, the "Debtors") dated November 29, 2004 (the "Sale Motion"), for entry of an order pursuant to sections 105, 363 and 365 of title 11, United States Code (the "Bankruptcy Code"), and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving, *inter alia*, (i) certain bidding procedures (the "Bidding Procedures") employed in connection with the proposed sale by Debtors of certain assets (the "Assets") free and clear of liens, claims and interests and free from stamp, sales or other similar taxes, pursuant to an Asset Purchase Agreement (the "Lifestyle Contract") dated November 29, 2004, among the Debtors and Collective Brands Inc., n/k/a Lifestyle Brands Ltd., (hereinafter "Lifestyle") subject to higher and better bids at an auction (the "Auction"), (ii) the notice of the Auction and hearing (the "Auction and Hearing Notice") to approve the sale of the Assets to the party or parties submitting the highest or best bid at the Auction (the "Sale Hearing") and the form asset purchase and other form agreements utilized in connection with the Auction, (iii) authorizing and approving the Sale of the Assets free and clear of liens, claims and interests and free from stamp, sales or other similar taxes, subject to higher and better offers after the Auction (the "Sale"), and (iv) authorizing the assumption and assignment and rejection of certain executory contracts in connection therewith (the "Assumption and Assignment or Rejection") and approving the cure amounts ("Cure Notices") for certain executory contracts to be assumed in connection with the Sale; and it appearing that under the circumstances here present, that due, good, sufficient and

timely notice of the relief sought and granted in this order has been given and that no other or

further notice need be given; and after due deliberation and sufficient cause appearing therefor, it

is hereby

**FOUND AND DETERMINED THAT:**

A.      All terms not defined herein shall have the same meaning as under the
Sale Motion, the Lifestyle Contract, and the Bidding Procedures.

B.      This Court has jurisdiction over the Sale Motion and the transactions
contemplated by the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core
proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this case and the Sale Motion is proper
pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      As evidenced by the certification of service previously filed with the
Court, and based on the representations of counsel at the Sale Hearing, (i) adequate and
sufficient notice of the Sale Motion, the Sale Hearing, the Assumption and Assignment or
Rejection of the Executory Contracts and Cure Notices (if any), the sale of the Assets, and of the
related transactions contemplated thereby has been provided in accordance with all applicable
provisions of the Bankruptcy Code and Bankruptcy Rules, all applicable orders, and the Local
Rules of this Court as modified by the Court for good cause shown under Federal Rule of
Bankruptcy Procedure 2002(a)(2); (ii) such notice was reasonable, sufficient, and appropriate
under the exigent circumstances presented by the Debtors, and (iii) no other or further notice of
the Sale Motion, the Sale Hearing, the Assumption and Assignment or Rejection of the
Executory Contracts and the Cure Notices, the sale of the Assets and all the related transactions
contemplated thereby shall be or is required.

D.      A reasonable opportunity to object or be heard with respect to the relief requested in the Sale Motion and the rights of third parties to submit higher or otherwise better offers for the Assets has been afforded to all interested persons and entities.

E.      The Debtors have articulated good and sufficient reason for approving the Bidding Procedures and the Auction and Hearing Notice employed in connection with the sale of the Assets.

F.      The Bidding Procedures and the Auction and Hearing Notice are reasonable and appropriate and are designed to maximize the recovery for the Assets.

G.      The Auction and Hearing Notice provided all creditors and parties in interest with due, adequate and timely notice of the sale of the Assets, the Auction, the Sale Hearing, and the Assumption and Assignment or Rejection of Executory Contracts and Cure Notices in accordance with all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules and the orders of this Court as modified for good cause shown under Federal Rule of Bankruptcy Procedure 2002(a)(2).

H.      The Form Asset Purchase Agreement is reasonable and appropriately employed by the Debtors in connection with the sale of the Assets to maximize the recovery for the Assets.

I.      The Debtors have demonstrated sound business justifications for (i) the Sale and the other transactions and actions contemplated by the Sale Motion pursuant to section 363 of the Bankruptcy Code and the Assumption and Assignment or Rejection of the Executory Contracts pursuant to section 363 and 365 of the Bankruptcy Code.  The relief requested in the Sale Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest.

J.      The terms and conditions of the Sale were negotiated, proposed and

agreed to by the Debtors and Lifestyle pursuant to the Lifestyle Contract as parties thereto at arm's length without collusion and in good faith and the Debtors and Lifestyle has complied with the Bidding Procedures in all respects.

K.      The terms and conditions of the Sale were negotiated, proposed and agreed to by the Debtors and Lifestyle as parties thereto without collusion and in good faith and from arm's-length bargaining positions.  Lifestyle  is a good faith purchaser under section 363(m) of the Bankruptcy Code and as such is entitled to all of the protections afforded thereby. Lifestyle will be acting in good faith within the meaning of Section 363(m) in closing the Sale. Lifestyle has not engaged in any conduct that would cause or permit the Sale to be voided under Bankruptcy Code section 363(n).

L.      The Bidding Procedures afforded a fair and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Assets and no higher or otherwise better offer has been made.  The Bidding Procedures obtained the highest value for the Assets for the Debtors and their estates under the circumstances of this case.

M.      The Sale and Auction conducted by the Debtors and their advisors was non-collusive, fair and reasonable and conducted in good faith.

N.      The consideration to be provided by Lifestyle for the Assets (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Assets and (iii) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

O.      The transfer of the Assets to Lifestyle under the Sale will be a legal, valid, and effective transfer of the Assets and will, upon the occurrence of the Closing in accordance with the terms of this Order vest in  Lifestyle all right, title and interest of the Debtors in the Assets free and clear of any and all Interests including mechanics', materialmen's and other

consensual and non-consensual liens and statutory liens, security interests, encumbrances and claims (including, but not limited to, any "claim" as defined in section 101(5) or "lien" as defined in section 101(37) of the Bankruptcy Code), reclamation claims, mortgages, deeds of trust, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, instruments, contracts, leases, licenses, options, rights of first refusal, contracts, offsets, recoupment, rights of recovery, judgments, orders and decrees of any Court or foreign or domestic governmental entity, claims for reimbursement, contribution, indemnity or exoneration, assignment, preferences, debts, charges, suits, licenses, options, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, causes of action and claims, or other encumbrances or restrictions on or conditions to transfer or assignment of any kind (including without limitation to the generality of the foregoing restrictions or conditions on or to the transfer, assignment, or renewal of licenses, permits, registrations, and authorizations or approvals of or with respect to governmental units and instrumentalities) to the fullest extent of the law, in each case whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown, whether arising prior to, on, or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Interests").

P.    The transfer of the Assets to Lifestyle free and clear of all Interests will not result in any undue burden or prejudice to any holders of any Interests since all such Interests of any kind or nature whatsoever shall attach to the proceeds of the Sale (the "Sale Proceeds") in the order of their priority, with the same validity, force and effect which they now have as against the Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto.

Q.      In accordance with the Final Order (A) Authorizing Debtors to Obtain Post-Petition Financing, and Granting Security Interests and Super-Priority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105 and 364(c); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (C) Authorizing Debtors to Enter into Agreements with Congress Financial Corporation (Central), as Agent, and Certain Other Lenders; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001, entered on November 30, 2004 (the "Final DIP Order") and the Loan Agreement (as defined in the Final DIP Order, and hereinafter referred to as the "DIP Loan Agreement"), all Sale Proceeds shall be remitted to Congress Financial Corporation (Central), as agent ("Agent") for itself and certain other lenders from time to time parties to the DIP Loan Agreement (collectively, "Lenders") for application against all Obligations (as defined in the DIP Loan Agreement, and hereinafter referred to as the "DIP Lending Obligations") including, without limitation, all DIP Lending Obligations relating to the Term Loans (as defined in the DIP Loan Agreement, and hereinafter referred to as the "DIP Term Loan Obligations").

R.      The sale and transfer of the Assets to Lifestyle is in anticipation, and are an important component, of any plan of reorganization or liquidation of the Debtors, and accordingly constitute transfers pursuant to § 1146(c) of the Bankruptcy Code, which shall not be taxed under any law imposing a stamp tax or similar tax.

S.      Upon the Closing of the Sale in accordance with the terms of this Order, the Debtors may assume the Assumed Contracts and assign each of them to Lifestyle  pursuant to section 363 and 365 of the Bankruptcy Code.  The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Sale and is in the best interests of the Debtors and their estates, creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

T.     The Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary and the Debtors have provided adequate assurance of future performance of obligations arising after the Closing under the Assumed Contracts.  The non-debtor party to any Assumed Contract shall be obligated to perform under said Assumed Contract after the Closing Date provided that the Cure Amount is paid.

U.     The requirements of sections 363(b), 363(f) and 365 of the Bankruptcy Code and any other applicable law relating to the sale of the Assets as provided under the Sale Motion have been satisfied.

NOW, THEREFORE, BASED UPON THE FOREGOING FINDINGS OF FACT, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, EFFECTIVE IMMEDIATELY, THAT:

1.     The Sale Motion is granted in its entirety.

2.     All objections to the Sale Motion and the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

3.     The terms and conditions of the Lifestyle Contract for the sale of the Assets (including all exhibits, schedules and annexes thereto), is hereby approved in all respects. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to consummate the Sale of the Assets, pursuant to and in accordance with the terms and conditions of the Lifestyle Contract without any further corporate authorization.

4.     The Bidding Procedures, Form Asset Purchase Agreement and the Auction and Hearing Notice be and hereby are approved in all respects.

5.      The Debtors are hereby authorized to execute and deliver, and are empowered to perform under, consummate and implement, the agreements, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale, and, upon the Closing of the Sale in accordance with the terms or this Order, to take all further actions as may be requested by Lifestyle for the purpose of assigning, transferring, granting, conveying and conferring to Lifestyle or reducing to possession, the Assets or portion thereof, or as may be necessary or appropriate to the performance of the obligations as contemplated by the agreements without need of further corporate action or approvals.  Pursuant to Bankruptcy Code sections 363 and 105, title to the Assets including any Assumed Contract shall pass to Lifestyle at Closing, free and clear of all Interests, with all the Interests in respect of the Assets to be unconditionally released, discharged and terminated as to the Assets, and with all Interests to attach only to the proceeds of the Sale with the same priority, validity, force and effect as they existed with respect to the Assets prior to Closing except as may be set forth herein, subject to any claims and defenses the Debtors or other parties may possess with respect thereto.

6.      The transfer of the Assets to Lifestyle shall constitute a legal, valid and effective transfer of the Assets, and shall, upon the occurrence of the Closing in accordance with the terms of this Order, vest in Lifestyle all right, title and interest of the Debtors in and to the Assets, free and clear of all Interests of any kind or nature whatsoever, with all such Interests to attach to the Sale Proceeds in the order of their priority, with the same validity, force and effect which they now have as against the Assets.

7.      Notwithstanding anything to the contrary contained herein, in accordance with the Final DIP Order and the DIP Loan Agreement, all Sale Proceeds shall be remitted to Agent, for itself and the other Lenders, for application against all DIP Lending Obligations including, without limitation, all DIP Term Loan Obligations.

8.      The Debtors are authorized to assume the Assumed Contracts and thereupon assign the Assumed Contracts to Lifestyle, pursuant to sections 363(b), 365(a) and 365(f) of the Bankruptcy Code as provided under the Lifestyle Contract, and the requirements of section 365(b)(1) and 365(f)(2) with respect thereto are deemed satisfied.  The Debtors are authorized to reject pursuant to section 365(a) of the Bankruptcy Code the Rejected Contracts as provided under the Sale Motion.

9.      Lifestyle shall promptly cure the liabilities under the Assumed Contracts including liability for all defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the Sale, provided, however, that Lifestyle's liability hereunder shall not exceed $5,000.00 for all the Assumed Contracts.  The Debtors shall promptly pay the remaining cure costs (if any) for the Assumed Contracts exceeding $5,000.00.

10.     Subject to the completion of the payments provided for in paragraph 9, the Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of Lifestyle in accordance with their respective terms, excluding and notwithstanding any provision in any such Assumed Contract (including those described in sections 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer to Lifestyle.

11.     From and after the Closing of the Sale and the satisfaction of cure cost consistent with paragraph 9, the Debtors shall be released from any and all obligations, claims and liabilities under the Assumed Contracts assigned to Lifestyle.  The Debtors shall have all the benefits and protections provided under section 365(k) of the Bankruptcy Code.

12.     Except as expressly permitted or otherwise specifically provided for under the Lifestyle Contract or this Order, effective upon the Closing of the Sale (i) all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and other regulatory authorities, lenders, trade and other creditors holding Interests (including but not limited to any claims under any applicable revenue, pension, ERISA,

tax, workers' compensation, labor, environmental or natural resource law, rule or regulation, or any products liability law) of any kind or nature whatsoever against or in the Debtors or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' businesses prior to the Closing of the Sale or the transfer of the Assets to Lifestyle, hereby are forever barred and estopped from asserting against Lifestyle, its successors or assigns (to the extent allowed by law), or the Assets, such persons' or entities' Interests and (ii) all such Interests shall be unconditionally released and terminated as to the Assets, provided, however, that nothing in this Order or the Asset Purchase Agreement releases, nullifies, or enjoins any right a governmental unit may claim to have under police and regulatory statutes or regulations to seek enforcement of any liability that an entity would allegedly be subject to as the owner or operator of real property or tangible assets after the date of entry of this Order.   Furthermore, notwithstanding anything herein to the contrary, nothing herein shall in any way affect or diminish any rights of the Debtors or any successor thereto (including any chapter 11 or chapter 7 trustee) with respect to obligations of Lifestyle arising under the Sale or this Order.  This Order shall be binding on the Debtors and the Debtors' estates (including following any conversion or dismissal of these cases), any successor chapter 7 estates and any chapter 7 or 11 trustees appointed in this case.

13.     The consideration to be provided by Lifestyle for the Assets is fair and reasonable, the result of open and competitive bidding, may not be avoided under section 363(n) of the Bankruptcy Code, and shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

14.     At the Closing, each holder of an Interest in the Assets is authorized and directed to execute such documents and take all other actions as may be necessary to release its

Interests against or in the Assets, if any, as such Interests may have been recorded or may otherwise exist.   If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests against or in the Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests that the person or entity has with respect to the Assets or otherwise, Lifestyle is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets upon the Closing of the Sale in accordance with the terms of this Order.   The foregoing notwithstanding, the provisions of this Order authorizing the sale and assignment of the Assets free and clear of the Interests shall be self executing, and notwithstanding the failure of Lifestyle, the Debtors, or any other party to execute, file, or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof or of the Lifestyle Contract, all Interests on the Assets shall be deemed divested, released and terminated.   At the election of Lifestyle, a certified copy of this Order may be filed in the records of any governmental department or agency to evidence the termination of any Interests, and no further action shall be necessary to evidence such termination.

15.    This Approval Order is and shall be binding upon and shall govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.   Each and every federal, state and local governmental agency, department or unit is hereby directed to

accept any and all documents and instruments necessary and appropriate to consummate the Transaction contemplated by the Lifestyle Contract.

16. Except as expressly permitted or otherwise specifically provided for in the Lifestyle Contract or this Approval Order, Lifestyle shall have no liability or responsibility for any Liability or other obligation of the Debtors arising under or related to the Assets and, to the extent allowed by law, Lifestyle (and its officers, members, managers and equity security holders) shall not be liable for any other claims against the Debtors, and Lifestyle shall have no successor or vicarious Liabilities of any kind or character whether known or unknown as of the Closing Date under the Lifestyle Contract, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing, including, but not limited to, any Liabilities under any revenue, pension, ERISA, tax, workers' compensation, labor, environmental or natural resource law, rule or regulation, or any products liability law, arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' businesses prior to the Closing.

17. Neither the purchase of the Assets by Lifestyle, nor any subsequent use by Lifestyle of any of the Assets previously operated or utilized by the Debtors, will cause Lifestyle or any of its affiliates to be deemed a successor in any respect to the Debtors' businesses within the meaning of any federal, state or local revenue, pension, ERISA, tax, labor or environmental law, rule or regulation or under any products liability law or doctrine with respect to Debtor's liability under such law, rules, regulations or doctrines. Lifestyle shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act or any federal, state or local environmental law by virtue of Lifestyle's purchase of the Assets.

18. This Court retains and shall have exclusive jurisdiction to enforce and implement the terms and conditions of the agreements executed in connection with the Sale

including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to Lifestyle, (b) compel delivery of the Purchase Price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Sale, and (d) interpret, implement and enforce the provisions of any agreement(s) executed in connection with the Sale.

19.     The transactions contemplated under the Sale are undertaken by Lifestyle in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale of any Assets shall not affect the validity of the Sale unless such authorization is duly stayed pending such appeal prior to the Closing.  Lifestyle is a purchaser in good faith of the Assets, and Lifestyle is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

20.     Consummation of the Lifestyle Contract and the transactions contemplated therein and thereby do not effect a de facto merger or consolidation of the Debtors and Lifestyle or result in the continuation of the Debtors' business under Lifestyle's control.  Lifestyle is not the alter ego of, a successor in interest to, or a continuation of the Debtors, nor is Lifestyle otherwise liable for the Debtors' liabilities, unless specifically provided for in the Lifestyle Contract or pursuant to this Approval Order.

21.     Nothing contained in any plan of reorganization or liquidation confirmed in this case or the order of confirmation confirming any such plan shall conflict with or derogate from the provisions of the Lifestyle Contract or the terms of this Approval Order.

22.     The terms and condition of the Lifestyle Contract and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and creditors, Lifestyle, the successors and assigns of each of the foregoing and any affected third parties (including, but not limited to, all persons asserting Interests in the Assets), notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding.

23.     The transfer of the Assets pursuant to the Sale, and the transactions contemplated thereby constitute steps toward the formulation, or in anticipation of the formulation of, a chapter 11 plan for the Debtors and as such, in accordance with § 1146(c) of the Bankruptcy Code, the making or delivery of any instrument of transfer to effectuate the Lifestyle  Contract and the transactions contemplated thereby shall not be taxed under any law imposing a stamp tax or a sale, transfer or any other similar tax, and the recordation of any instruments (including bills of sale, assignments and amendments thereto) to evidence the Sale of the Assets shall not be subject to any such tax.

24.     All of the Debtors' interests in the Assets to be acquired by Lifestyle under the Sale shall be, as of and upon the occurrence of the Closing, transferred to and vested in Lifestyle. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets acquired by Lifestyle under the Lifestyle Contract and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Assets to Lifestyle .

25.     Upon Closing, in accordance with this Order, Lifestyle shall be entitled to immediate and unfettered access to the Assets and the Debtors shall cooperate with Lifestyle to, among other things, provide to Lifestyle books, records, and other information and data related to the Assts and the Business for which the Assets were utilized, as may be reasonably requested to enable Lifestyle to utilize the Assets.  All entities who are presently in possession or control, may be in possession or control, of some or all of the Assets are hereby directed to surrender possession and/or control of the Assets to Lifestyle on the Closing Date.

26.     If Lifestyle fails to Close the Sale in accordance with the terms and conditions of this Order and as provided for under the Lifestyle Contract, the Debtors are authorized to without further notice or order Close a Sale of the Assets with ITOCHU International ("ITOCHU") which submitted the second highest and best bid for the Assets on

December 8, 2004  (the "Back-Up Bid") in accordance with the terms and condition of the Back-Up Bid.  Should the Debtors Close a Sale of the Assets with ITOCHU in accordance with this paragraph, all other provisions of this Order shall apply with equal force to ITOCHU and the Debtors as if the Back-Up bid were selected as the Winning Bid and ITOCHU were the Winning Bidder.

27.     The provisions of this Order are nonseverable and mutually dependent.

28.     This order shall be effective and enforceable immediately upon entry.  The provisions of Bankruptcy Rules 6004(g) and 6006(d) staying the effectiveness of this Order are hereby waived, and this Order shall be effective and the parties may, but shall not be required to, consummate the Sale immediately upon entry of this Order.

29.     There exists no just reason for delay in entering a final judgment in accordance with the foregoing, and therefore this Order shall be and hereby is declared to be a final judgment, and entry hereof as such is hereby directed pursuant to Bankruptcy Rules 7054 and 9014.  This Order is without prejudice to any further proceedings being undertaken or orders entered, after notice and a hearing, relating to the Sale, assumption and assignment of the Assumed Contracts and any other matter related to the Sale Motion.

30.     All findings of fact and conclusions of law set forth in this Order shall apply only to this particular Sale of the subject Assets and shall not apply to any other transaction or relationship between the parties.  Nothing herein shall constitute a finding of fact or conclusion of law affecting the rights of any party with respect to any transaction, right, claim, or cause of action other than with respect to the Assets.

**IT IS SO ORDERED.**

# # #