# EXHIBIT B

**Overview of Significant Assumptions**

Basis of Presentation

The Debtors' management have developed the Financial Projections based on the following underlying assumptions: (1) current and projected market conditions in both the bike and golf businesses, (2) no material change occurring to the existing customer and supplier base, (3) no new product lines, (4) the ability of the Debtors to maintain sufficient working capital to fund operations or to have access to financing sources to fund any deficiencies, (5) termination of the Huffy Corporation Retirement Plan and (6) confirmation of the Plan.

The Projections incorporate "Fresh Start Reporting" principles, which the Debtors will be required to adopt upon emergence from bankruptcy. Fresh Start Reporting requires, among other things, that adjustments be made to the historical carrying value of assets based upon an allocation of continuing liabilities and enterprise value.

Plan of Reorganization

The Financial Projections assume the following as it relates to the Plan of Reorganization: (1) emergence from chapter 11 on September 30, 2005, (2) conversion of pre-petition debt to equity, (3) issuance of $12 million in notes to pre-petition creditors with an interest rate of 10% payable over 4 years beginning in June 2007 (the "Distribution Notes"), and (4) equity value of $20 million.

New Loan Facility

The Financial Projections assume that Huffy obtains a new $50 million loan facility upon emergence that provides for advances based upon typical advance rates of accounts receivable and inventory, plus an additional $5 million. The additional $5 million is available through April 30, 2006, during which time the new lender will hold a first lien on substantially all of the assets of Huffy including intellectual property. On April 30, 2006, any amounts due under the additional $5 million of availability will be repaid, and the new lender will relinquish the first position on the intellectual property to certain trade creditors and the holders of the Distribution Notes.

**Balance Sheet Assumptions**

Cash

All cash receipts are applied to the outstanding revolving credit facility on a daily basis and borrowings are made from the revolving credit facility on a daily basis in a sufficient amount to cover outstanding checks. Accordingly, no cash balance is projected.

Accounts Receivable

Accounts receivable consists of amounts invoiced to third parties, net of program allowances and reserves for uncollectible accounts.

Inventory

Inventory primarily consists of finished wheeled products and golf products, including goods in-transit due to purchase order terms being FOB China. Inventory is valued at the lower of cost or market, cost being determined on a first-in, first-out basis (FIFO).

Other current assets

Prepaid and other current assets include the unamortized value of certain assets such as prepaid insurance.

Furniture, fixtures and equipment

Furniture, fixtures and equipment represents the personal property utilized in the operation of the business. These projections assume that Huffy does not own any real property after emergence.

Goodwill and other intangibles

Goodwill and other intangibles represent values assigned to tradenames and other intangibles based upon "fresh start reporting."

Revolving credit facility

Revolving credit facility represents the direct borrowings under the New Loan Facility. Existing letters of credit in support of legacy workers compensation insurance policies of approximately $5.5 million are assumed to be drawn and become part of funded debt upon emergence.

Accounts Payable

Accounts payable represents the post-petition trade payables to suppliers in the ordinary course of business. The projections assume that the suppliers extend payment terms from the current 60-day level to 90 days beginning with October 01, 2005 purchases.

Accrued Liabilities

Accrued Liabilities represent the post-petition accruals for costs incurred but not paid as of the respective balance sheet dates, excluding trade payables.

Distribution Notes

The creditor note represents the $12 million in distribution notes bearing interest at a rate of 10%. The notes are payable in semi-annual payments over 4 years beginning in June 2007: $2.0 million in 2007, $2.5 million in 2008, $3.5 million in 2009, and $4.0 million in 2010.

Other Long-Term Liabilities

Other long-term liabilities are comprised of income tax liabilities being paid over six years and the liability for post-employment medical benefits.

**Income Statement Assumptions**

Revenues

Pricing and product mix are projected to be consistent with current levels. Revenue is forecasted to increase throughout the Projection Period at a growth rate of 2% per year.

Costs and Expenses

Costs and expenses include all of the costs and expenses incurred in the operation of the business including the costs of goods sold, warehousing, labor costs, sales commissions, advertising, marketing, and product design and engineering. Gross margins are projected to be consistent with current levels by product categories. General operating expenses are projected to be maintained at current levels through the projection period while supporting higher sales volumes due to several initiatives management has in process.

Reorganization & Non-recurring Items

Reorganization & non-recurring items consists primarily of professional fees related to the reorganization process and other related items.

Interest Expense

Interest expense includes the interest on the new loan facility, distribution notes and charges relating to the defrayal of supplier's interest expense for financing the additional thirty-days of trade terms.   Interest is charged at the following rates; Distribution Notes – 10%; accounts receivable and inventory revolving facility – 7.5% through December 31, 2005 and 8% thereafter; additional $5.0 million of availability – 11.5% through December 31, 2005 and 12% thereafter; supplier interest defrayal – .57% of invoice amount.

Income Taxes

The financial projections assume Huffy does not pay income taxes for 2004.  It is assumed that the Company begins paying taxes at an estimated statutory rate of 38.5% beginning in 2006.  Total income tax expense for the years 2006 through 2010 included in the financial projections is approximately $10 million.

The Company is currently developing estimates of the amount of tax attributes that will be available upon emergence from bankruptcy. Such computations are complex and are impacted by the nature of the Company's pre-emergence attributes, including net operating loss carryforwards and losses incurred during the year of emergence; the tax basis in the Company's assets; and the amount of cancellation of indebtedness income, each determined on a separate legal entity basis.  Use of the tax attributes remaining after reduction as a result of cancellation of indebtedness income may be limited as a result of the change in control of the Company that will occur upon emergence. To the extent that net operating loss carryforwards and other tax attributes are available to offset taxable income during the projection period, payments of income tax may be lower than the payments reflected in the financial projections. If it is determined that the Company has tax basis in excess of the fair market value of its assets, it is also possible that tax payments in excess of those reflected in the financial projections may be required. Further, under applicable tax rules, it is possible that the tax basis in assets, including but not limited to depreciable assets, inventory and accounts receivable, will be reduced as a result of the cancellation of indebtedness income of the Company and its subsidiaries. If reductions to tax basis are required, tax payments in excess of those reflected in the financial projections may be required. The Company will finalize these computations prior to filing its tax return for the year ending December 31, 2005, which is due no later than September 15, 2006.

**HUFFY CORPORATION**
**Consolidated Balance Sheet**
**Forecast**

| ($000) | Opening Balance Sheet | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|---|---|---|
| Cash | - | - | - | - | - | - | - |
| Net Accounts Receivable | 26,290 | 27,060 | 24,170 | 24,653 | 25,146 | 25,649 | 26,162 |
| Net Inventory | 43,600 | 25,900 | 25,500 | 26,010 | 26,530 | 27,060 | 27,601 |
| Other Current Assets | 6,811 | 10,765 | 8,822 | 11,019 | 8,679 | 11,019 | 8,679 |
| **Total Current Assets** | 76,701 | 63,725 | 58,492 | 61,682 | 60,355 | 63,728 | 62,442 |
| | | | | | | | |
| Furniture, Fixtures & Equipment | 1,426 | 1,396 | 1,468 | 1,547 | 1,626 | 1,705 | 1,784 |
| Goodwill & Other Intangibles | 34,070 | 34,070 | 34,070 | 34,070 | 34,070 | 34,070 | 34,070 |
| **Total Assets** | 112,197 | 99,191 | 94,030 | 97,299 | 96,051 | 99,503 | 98,296 |
| | | | | | | | |
| Revolver | 39,782 | 31,787 | 22,267 | 24,924 | 22,995 | 26,461 | 25,113 |
| Accts Payable | 26,997 | 27,137 | 30,247 | 30,814 | 31,393 | 31,984 | 32,586 |
| Accrued Liabilities | 7,747 | 3,778 | 3,778 | 3,778 | 3,778 | 3,778 | 3,778 |
| **Total Current Liabilities** | 74,526 | 62,702 | 56,292 | 59,516 | 58,166 | 62,223 | 61,477 |
| | | | | | | | |
| Distribution Notes | 12,000 | 12,000 | 12,000 | 10,000 | 7,500 | 4,000 | - |
| Other Long Term Liabilities | 5,671 | 5,671 | 5,021 | 4,371 | 3,721 | 3,071 | 2,421 |
| **Total Liabilities** | 92,197 | 80,373 | 73,313 | 73,887 | 69,387 | 69,294 | 63,898 |
| | | | | | | | |
| **Shareholders Equity** | 20,000 | 18,818 | 20,717 | 23,412 | 26,664 | 30,209 | 34,398 |
| | | | | | | | |
| **Total Liab. & Equity** | 112,197 | 99,191 | 94,030 | 97,299 | 96,051 | 99,503 | 98,296 |

December 31, spans across columns 2005–2010.

**HUFFY CONSOLIDATED**
Statement of Income
Forecast

| ($000) | 4th Qtr 2005 | 2006 | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|---|---|
| Net Sales | 63,965 | 215,931 | 219,991 | 224,567 | 229,235 | 233,997 |
| Total Costs and Expenses | 60,727 | 207,880 | 210,739 | 214,760 | 218,865 | 223,055 |
| Operating Income | 3,238 | 8,051 | 9,252 | 9,807 | 10,370 | 10,942 |
| | | | | | | |
| Other (Income)/Expense: | | | | | | |
| Reorganization and Non Recurring Items | 2,784 | - | - | - | - | - |
| Interest Expense | 1,636 | 4,964 | 4,870 | 4,520 | 4,605 | 4,131 |
| Income Before Taxes | (1,182) | 3,087 | 4,382 | 5,287 | 5,765 | 6,811 |
| Income Taxes | - | 1,188 | 1,687 | 2,035 | 2,220 | 2,622 |
| Net Income | (1,182) | 1,899 | 2,695 | 3,252 | 3,545 | 4,189 |
| Depreciation & Amortization | 168 | 672 | 671 | 671 | 671 | 671 |
| EBITDA before restructuring | 3,406 | 8,723 | 9,923 | 10,478 | 11,041 | 11,613 |

**HUFFY CORPORATION**
**Consolidated Monthly Cash Flow**
**(Amounts In Thousands of Dollars)**

|  | 4th Qtr 2005 | 2006 | 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|---|---|---|
| **CASH FROM OPERATIONS** | | | | | | |
| Net Income | (1,182) | 1,899 | 2,695 | 3,252 | 3,545 | 4,189 |
| | | | | | | |
| Depreciation | 168 | 672 | 671 | 671 | 671 | 671 |
| (Increase)/Decrease in Net Accounts Receivable | (770) | 2,890 | (483) | (493) | (503) | (513) |
| (Increase)/Decrease in Net Inventories | 17,700 | 400 | (510) | (520) | (530) | (541) |
| (Increase)/Decrease in Other Current Assets | (3,954) | 1,943 | (2,197) | 2,340 | (2,340) | 2,340 |
| Increase/(Decrease) in Accts Payable | 140 | 3,110 | 567 | 579 | 591 | 602 |
| Increase/(Decrease) in Accrued Liabilities | (3,969) | - | - | - | - | - |
| Increase/(Decrease) in Other Long Term Liabilities | - | (650) | (650) | (650) | (650) | (650) |
| **Cash Provided By/(Used In) Operations** | 8,133 | 10,264 | 93 | 5,179 | 784 | 6,098 |
| | | | | | | |
| **CASH FROM INVESTING ACTIVITIES** | | | | | | |
| Capital Expenditures, Net | (138) | (744) | (750) | (750) | (750) | (750) |
| **Cash Provided By/(Used In) Investing** | (138) | (744) | (750) | (750) | (750) | (750) |
| | | | | | | |
| **CASH FROM FINANCING ACTIVITIES** | | | | | | |
| Increase/(Decrease) in Revolver | (7,995) | (9,520) | 2,657 | (1,929) | 3,466 | (1,348) |
| Increase/(Decrease) in Distribution Notes | - | - | (2,000) | (2,500) | (3,500) | (4,000) |
| **Cash Provided By/(Used In) Financing** | (7,995) | (9,520) | 657 | (4,429) | (34) | (5,348) |
| | | | | | | |
| **Net Change in Cash and Investments** | - | - | - | - | - | - |
| Cash and Investments at the Beginning of the Period | - | - | - | - | - | - |
| **Cash and Investments at the End of the Period** | - | - | - | - | - | - |

**EXHIBIT C**

LIQUIDATION ANALYSIS

## LIQUIDATION ANALYSIS

## OVERVIEW

Section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired Allowed Claim of Equity Interest either (a) accept the plan of reorganization or (b) receive or retain under such plan property of a value, as of the effective date, that is not less than the value such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the effective date of the plan.

The purpose of the Liquidation Analysis that follows (the "Liquidation Analysis") is to provide information in order for the Bankruptcy Court to determine that the Plan satisfies this requirement. The Liquidation Analysis was prepared to assist the Bankruptcy Court in making this determination and should not be used for any other purpose.

The following presents the general assumptions that were used in preparing the Liquidation Analysis assuming a chapter 7 case in which a chapter 7 trustee is charged with reducing to cash any and all assets of the Debtors and making distributions to the holders of Allowed Claims and Equity Interests in accordance with the distributive provisions of section 726 of the Bankruptcy Code.

Conversion of the Debtors' cases to cases under chapter 7 of the Bankruptcy Code would likely result in additional costs to the estates. Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee as well as professionals retained by the trustee, asset disposition expenses (including broker fees and other commissions), personnel costs, and costs and expenses associated with preserving and protecting the Debtors' assets during the liquidation period.

The Liquidation Analysis is limited to presenting information provided by management and does not include an independent evaluation for the underlying assumptions. The Liquidation Analysis has not been examined or reviewed by independent accountants in accordance with standards promulgated by the American Institute of Certified Public Accountants. The estimates and assumptions, although considered reasonable by management, are inherently subject to significant uncertainties and contingencies beyond the control of management. Accordingly, there can be no assurance that the results shown would be realized if the Debtors were liquidated, and actual results in such case could vary materially from those presented. If actual results are different from those shown, or if the assumptions used in formulating the Liquidation Analysis were not realized, then distributions to and recoveries by holders of Allowed Claims and Equity Interests could be materially affected.

## OVERVIEW (Continued)

Additionally, the actual amounts of claims against the Debtors' estates could vary significantly from estimated amounts depending upon the claims asserted during the pendency of the chapter 7 case, by reason of, among other things, the breach or rejection of executory contracts and leases. The Liquidation Analysis does not include liabilities that may arise as a result of litigation, certain new tax assessments, or other potential claims. The Liquidation

Analysis also does not include recoveries from potential avoidance actions. For the foregoing reasons and others, the Liquidation Analysis is not necessarily indicative of the value that may be realized in an actual liquidation, which values could vary materially from the estimates provided herein.

The Liquidation Analysis, which was prepared by the Debtors in consultation with their financial and legal advisers, is based upon a number of estimates and assumptions that, although developed and considered reasonable by management, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtors and management. The Liquidation Analysis is based upon assumptions with regard to liquidation decisions that would be made by the trustee (not management) and that are subject to change. Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized by the Debtors were they, in fact, to undergo such a liquidation.

## GENERAL ASSUMPTIONS

(1)     The Liquidation Analysis is based upon an estimate of the proceeds that would be realized by the Debtors in the event that the Debtors' assets are liquidated under chapter 7 of the Bankruptcy. Code. The Liquidation Analysis is based upon projected balance sheets as of the estimated Plan effective date, which is September 30, 2005.

(2)     The chapter 7 liquidation period is assumed to last six months following the appointment or election of a chapter 7 trustee. It is assumed that the wind down of the business operations of the Debtors will occur in the first three months. This will include the collection of receivables, the sale of inventories, and the winding down of daily operations. The marketing and sale of furniture, fixtures and equipment is assumed to be complete by the end of the sixth month.

(3)     All distributions will be made as and when proceeds from the disposition of assets and collection of receivables are received; however, the projected recoveries have not been discounted to reflect the present value of distributions.

GENERAL ASSUMPTIONS (Continued)

(4)     The claim amounts reflected in the Liquidation Analysis were estimated based upon a review of the Debtors' balance sheets as of June 30, 2005, proofs of claim filed on or prior to the March 15, 2005 bar date, and estimates of claims that would arise in the event the Debtors' cases were converted to cases under chapter 7 of the Bankruptcy Code.  The actual amount of claims allowed will change as a result of the resolution of various disputed, contingent, or unliquidated claims that have been or may be filed with the Bankruptcy Court.

(5)     The Liquidation Analysis does not assume the sale of the Debtors' assets or any position thereof on a going concern basis.  As a result, the values reflected in the Liquidation Analysis are not indicative of the values that might be received were the Debtors to sell any of their assets as a going concern separately or a whole. The values reflected in the Liquidation Analysis are based solely on the assumption that the Debtors pursue a pure liquidation under chapter 7 of the Bankruptcy Code.


NOTES TO STATEMENT OF ASSETS

(1)     Cash- All cash receipts are applied to the outstanding revolving credit facility on a daily basis and borrowings are made from the revolving credit facility on a daily basis in a sufficient amount to cover outstanding checks.  Accordingly, the Debtors do not project a cash balance.

(2)     Accounts Receivable- Accounts receivable consists of amounts invoiced to third parties, net of program allowances and reserves for uncollectible accounts.

(3)     Inventory- Inventory primarily consists of finished bicycles and golf clubs, a portion of which is in-transit at any given time due to purchase order terms being FOB China. Costs to be incurred to receive in-transit inventory, transfer and warehouse goods as well as any freight, duties and royalties due on the inventory sold is included in the winddown operating costs and not reflected in the estimated recovery range.

(4)     Prepaid and other current assets- Prepaid and other current assets include the unamortized value of certain assets such as prepaid insurance as well as retainers on deposit with professionals.

(5)     Furniture, fixtures and equipment- Furniture, fixtures and equipment represents the personal property utilized in the operation of the business.  Huffy does not own any real property.

(6)     Other assets including intangibles- Other assets including intangibles represents the historical carrying values of tradenames and goodwill as well as $1.4 million funding of non-qualified deferred compensation plans.

## NOTES TO APPLICATION OF GROSS LIQUIDATION PROCEEDS

(1)     <u>Winddown Operating Costs</u>-Winddown operating costs represent direct costs to orderly winddown the business including the costs to receive in-transit inventory, transfer and warehouse goods as well as any freight, duties and royalties due on the inventory sold.

(2)     <u>DIP Lender Claims</u>- DIP Lender Claims represents the amount of direct borrowings under the revolving credit facility plus the amount of outstanding letters of credit and the professional fee carve-out.

(3)     <u>Trustee fees</u>- Trustee fees are based upon the statutory formula for the cap of trustee fees which approximate 3% of gross proceeds

(4)     <u>Chapter 7 Administrative Costs</u>-Chapter 7 Administrative Costs represent the costs of professional fees for administration of the Chapter 7 estate including attorneys and accountants as well as the cost of third-party accounts receivable collection agencies.

(5)     <u>Chapter 11 Administrative Claims</u>- Chapter 11 Administrative Claims represent post-petition expenses that have not been paid as of the date of the conversion to a Chapter 7 liquidation.  The majority of these claims would represent trade payables relating to the purchase of merchandise on 60 payment terms.

(6)     <u>Priority Claims</u>- Priority claims represent the latest estimate of pre-petition tax claims.

(7)     <u>Unsecured Non-Priority Claims</u>- Unsecured non-priority claims represent the latest estimate of these pre-petition claims including trade payables, deferred compensation liabilities, environmental liabilities and pension termination liabilities.

HUFFY CORPORATION
LIQUIDATION ANALYSIS
($ IN MILLIONS)

| | Projected Book Value 9/30/2005 (unaudited) | Estimated Recovery Percentage | | Estimated Proceeds | |
|---|---|---|---|---|---|
| | | Low | High | Low | High |
| **I. STATEMENT OF ASSETS** | | | | | |
| Current assets: | | | | | |
| Cash | $0.0 | 100.0% | 100.0% | $0.0 | $0.0 |
| Accounts receivable | $26.3 | 70.0% | 90.0% | $18.4 | $23.7 |
| Inventory | $43.6 | 60.0% | 85.0% | $26.2 | $37.1 |
| Prepaids and other current assets | $6.3 | 5.0% | 10.0% | $0.3 | $0.6 |
| Total current assets | $76.2 | | | $44.9 | $61.4 |
| Furniture, fixtures and equipment | $1.4 | 10.0% | 25.0% | $0.1 | $0.4 |
| Other assets including intangibles | $32.6 | 19.6% | 50.3% | $6.4 | $16.4 |
| **Gross Liquidation Proceeds** | **$110.2** | | | **$51.4** | **$78.2** |

HUFFY CORPORATION
LIQUIDATION ANALYSIS
($ IN MILLIONS)

| | Estimated Claim Amount | Estimated Recovery Percentage | | Estimated Proceeds | |
|---|---|---|---|---|---|
| | | Low | High | Low | High |
| **II. APPLICATION OF GROSS LIQUIDATION PROCEEDS** | | | | | |
| **Gross Liquidation Proceeds** | | | | $51.4 | $78.2 |
| Less: Winddown Operating Costs | | | | ($7.5) | ($6.0) |
| **Proceeds after Wind-down Operating Costs** | | | | **$43.9** | **$72.2** |
| Less: DIP Lender Claims | $40.1 | 100.0% | 100.0% | ($40.1) | ($40.1) |
| **Proceeds Available After DIP Lender Claims** | | | | **$3.8** | **$32.1** |
| Less: Trustee fees | | | | ($1.5) | ($2.3) |
| Less: Chapter 7 Administration Costs | $2.0 | 100.0% | 100.0% | ($2.0) | ($2.0) |
| **Proceeds Available for Distribution** | | | | **$0.3** | **$27.8** |
| Less: Chapter 11 Administrative Claims | $31.1 | 1.0% | 89.4% | ($0.3) | ($27.8) |
| **Proceeds Available After Administrative Claims** | | | | **$0.0** | **$0.0** |
| Less: Priority Claims | $2.0 | 0.0% | 0.0% | $0.0 | $0.0 |
| **Proceeds Available After Priority Claims** | | | | **$0.0** | **$0.0** |
| **Amounts Available for Distribution:** | | | | | |
| **Unsecured Non-Priority Claims** | $150.0 | 0.0% | 0.0% | **$0.0** | **$0.0** |

# EXHIBIT D

**Distribution Notes A**
**Summary of Key Terms**

| | |
|---|---|
| **Issuer:** | Huffy Corporation ("Huffy" or the "Company") |
| **Issue Size:** | $3 million to be distributed to Class 4 |
| **Maturity Date:** | December 31, 2010 |
| **Interest Rate:** | 10%, payable semi-annually |
| **Ranking:** | Second security interest on all assets of Huffy to be shared on a *pari passu* basis with the trade credit provided by the Sinosure Group and Distribution Note B and subject to an inter-creditor agreement with the trustee for Distribution Note B, the Sinosure Group and the Company's working capital facility lender(s). On and after April 30, 2006 a first security interest on the intellectual property of Huffy and a second security interest on all the other assets of Huffy to be shared pari passu with the trade credit provided by the Sinosure Group and Distribution Note B. |
| **Amortization:** | $250,000 payable on each of June 30, 2007 and December 31, 2007 $312,500 payable on each of June 30, 2008 and December 31, 2008 $437,500 payable on each of June 30, 2009 and December 31, 2009 $500,000 payable on each of June 30, 2010 and December 31, 2010 |
| **Covenants:** | Limitations on cash dividends on capital stock except as provided in Dividend Payment Test. Cross default to working capital facility in respect of defaults which have resulted in a suspension or limitation of further drawings on such facility or in a demand for accelerated repayment. |

**EXHIBIT E**

**Distribution Note B**
**Summary of Key Terms**

**Issuer:**                    Huffy Corporation ("Huffy" or the "Company")

**Issue Size:**               $9 million to be distributed to Class 5

**Maturity Date:**            December 31, 2010

**Interest Rate:**            10%, payable semi-annually

**Ranking:**                  Second security interest on all assets of Huffy to be
                              shared on a *pari passu* basis with the trade credit
                              provided by the Sinosure Group and Distribution
                              Notes A and subject to an inter-creditor agreement with
                              the trustee for Distribution Notes A, the Sinosure
                              Group and the Company's working capital facility
                              lender(s).  On and after April 30, 2006 a first security
                              interest on the intellectual property of Huffy and a
                              second security interest on all the other assets of Huffy
                              to be shared pari passu with the trade credit provided by
                              the Sinosure Group and the Distribution Notes A.

**Amortization:**             $750,000 payable on each of June 30, 2007 and
                              December 31, 2007
                              $937,500 payable on each of June 30, 2008 and
                              December 31, 2008
                              $1,312,500 payable on each of June 30, 2009 and
                              December 31, 2009
                              $1,500,000 payable on each of June 30, 2010 and
                              December 31, 2010

**Covenants:**                Limitations on cash dividends on capital stock except as
                              provided in Dividend Payment Test.  Cross default to
                              working capital facility in respect of defaults which have
                              resulted in a suspension or limitation of further
                              drawings on such facility or in a demand for accelerated
                              repayment.

**EXHIBIT F**

## Supply Principles

<u>Structure</u>

1. Supply Principles contemplate Huffy dealing with individual Sinosure Group suppliers for orders and entering into purchase orders on customary terms, consistent with the terms of the Supply Principles (which will not address many issues of the ordering, shipment, quality control, etc. process historically dealt with in Huffy purchase orders and other documentation with suppliers).

2. These Supply Principles are intended to govern the supply relationship between Huffy and the Sinosure Group during the five year term commencing on the Effective Date of the POR. They are not intended to create legally binding relations between the parties except to the extent embodied in Huffy purchase orders accepted by a supplier.

<u>Measurement Period</u>

3. Each of the five successive one year periods from the Effective Date of the POR (the first such period commencing immediately following, the last day of the month in which the anniversary of the Effective Date falls). The first such period is expected to be October 1, 2005 through September 30, 2006.

<u>Preferred Vendor Status and Competitive Pricing</u>

4. Product pricing during the term of the Supply Principles to be competitive with pricing for Huffy bicycle and golf products sourced in the Greater China market. Price negotiations to be conducted between Huffy and the individual Sinosure Group suppliers.

5. In the event any particular Sinosure Group supplier with which Huffy has been dealing is not offering competitive pricing or is in default of timely shipping, quality or other terms of applicable purchase orders, Huffy shall offer the opportunity to fulfill further orders for such products to other Sinosure Group suppliers. In the event that no Sinosure Group supplier is prepared to fill such orders at competitive prices, Huffy may place such orders with non-Sinosure Group suppliers in Greater China on terms no more favorable than those offered by Huffy to the Sinosure Group suppliers after providing such Sinosure Group suppliers the opportunity to meet such non-Sinosure Group offer.

6. In respect of new products, Huffy shall offer the opportunity to provide such products to the suppliers of its choice among the Sinosure Group suppliers. In the event that no Sinosure Group supplier is prepared to fill such orders at competitive prices, Huffy may place such orders with non-Sinosure Group suppliers in Greater China on terms no more favorable than those offered by Huffy to the Sinosure Group suppliers after

providing such Sinosure Group suppliers the opportunity to meet such non-Sinosure Group offer.

## Trade Credit

7. Trade credit terms of 90 days from FOB China are to be provided by the relevant Sinosure Group supplier in respect of each shipment during the term of the Supply Principles, in respect of aggregate volumes not exceeding those set forth in Huffy's 2006-2010 financial projections attached to Huffy's Amended Disclsoure Statement. Trade credit terms in respect of additional volumes to be negotiated between Huffy and the concerned supplier(s). Initial 90 day trade credit terms are contemplated in respect of purchase orders agreed after June 20, 2005 providing for shipment after the expected (September 30, 2005) Effective Date of the POR and provided that actual shipment takes place after but not on the Effective Date of the POR in Ohio.

8. Export credit insurance by Sinosure for 90 day terms to Sinosure Group suppliers on terms comparable to those provided generally to other Sinosure customers from time to time during the term of the Supply Principles. In the event Huffy is permitted to place orders with a supplier outside the Sinosure Group (as per paragraphs 5 and 6 above), export credit insurance offered by Sinosure to such supplier to be on comparable terms, provided that such supplier meets applicable Sinosure risk underwriting standards.

9. Trade credit provided by the Sinosure Group is to be secured by a second lien on all Huffy's assets through April 30, 2006 and from May 1, 2006 forward a first lien on Huffy's intellectual property rights and a second lien on other assets of Huffy, in both cases on a *pari passu* basis with the Distribution Notes (for the benefit of all unsecured creditors pursuant to the Plan of Reorganization Term Sheet) and subject to an inter-creditor agreement with the Company's working capital facility lender(s).

## Other Terms

10. Standard Huffy purchase order terms will apply.

11. Sinosure Group suppliers and Huffy shall comply with all customer/ licensor standards and ethics codes.

12. The Sinosure Group suppliers to represent in volume not less than 90% of current shipments to Huffy at the Effective Date of the POR.

# EXHIBIT G
### (to be supplied)